IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| TIMOTHY BROWN, | ) |
|     Plaintiff, | ) |
| vs. | ) CIVIL ACTION NO. 3:24-MC-9999 |
| CITY OF COLUMBIA, TENNESSEE, | ) |
|     Defendant. | ) |

## VERIFIED COMPLAINT

COME NOW Plaintiff Timothy Brown and alleges the following:

### INTRODUCTION

1. This is a civil rights action brought by Timothy Brown ("Brown") against City of Columbia, Tennessee ("Columbia"), challenging Columbia policy and practice of supplying private entities that have permits to use public property for public events with proprietary control over the property so they can ban disfavored viewpoints.

2. Pursuant to 42 U.S.C. §§ 1983 and 1988, Brown seeks nominal damages for the past violation of his constitutional rights and injunctive and declaratory relief to prevent future violation of his constitutional rights.

3. This cause of action is premised on the First and Fourteenth Amendments to the United States Constitution, particularly regarding Brown's rights to free speech and due process.

4. Every act specified herein was committed by Defendants under the color of state law and authority.

## JURISDICTION AND VENUE

5. This cause of action raises federal questions under the First and Fourteenth Amendments to the United States Constitution and federal statute 42 U.S.C. § 1983.

6. The Court has jurisdiction over Brown's claims for nominal damages and injunctive relief under 28 U.S.C. §§ 1331 and 1343, request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and claims for costs and attorney fees per 42 U.S.C. § 1988.

7. The Middle District of Tennessee is the proper venue for this cause in accordance with 28 U.S.C. § 1391(b). Defendant resides in this district and the claims brought against it arise in this district.

## PLAINTIFF

8. Plaintiff Brown is a resident of Gallatin, Tennessee.

## DEFENDANT

9. Defendant Columbia is a municipal governmental authority and a subdivision of the State of Tennessee, having the capacity to enact and enforce laws and ordinances regulating mass gathering permits and other activities in public parks and ways.

## STATEMENT OF FACTS

### *Brown's Desire to Share his Religious Beliefs*

10. Brown is an evangelical Christian who wants to share the gospel (good news of Jesus Christ) with others.

11. He wants non-Christians to know we all sin and deserve eternal damnation and that Jesus Christ grants salvation to those who repent of their sins and believe and trust in him.

12. In sharing the gospel message with others, Brown explains our universal need for Jesus and the forgiveness of sins, specifying certain culturally accepted behaviors that Brown believes the Bible condemns as sin, like abortion, homosexuality, and transgenderism.

13. Aside from non-Christians, Brown also imparts his religious messaging to individuals who profess to be Christian but do not share Brown's views about sin.

14. Brown does not attempt to evangelize professing Christians. Rather, he tries to direct them to Scripture to aid them in their thinking about sinful behavior.

15. He often conducts his expressive activities alone.

16. Brown typically hands out literature, which he uses to start consensual conversations about the gospel and his Christian beliefs.

17. Brown communicates his religious beliefs in public areas that maintain significant pedestrian traffic so he can reach as many people as possible with his message.

18. For this reason. Brown particularly seeks out public venues during popular public events.

19. Among other public places hosting public events, Brown wants to share his religious message in Riverwalk Park during public events and especially during the Columbia Pride Festival ("Pride Fest").

### *Public Nature of Riverwalk Park*

20. Riverwalk Park is a public park located in Columbia near the downtown square. Columbia owns and manages the park.

21. Riverwalk Park is bordered by Riverside Drive, E. Fifth Street, and Duck River.

22. As a public park, Riverwalk Park is open to the general public all year round. It features wide open greenways, paved walkways, splash pad, basketball court, and multiplate pavilions.

23. Serving as a destination site in Columbia, Riverwalk Park is uniquely well-suited for expression and the free exchange of ideas.

24. Riverwalk Park serves as host to public events, including Pride Fest.

### *Columbia Pride Holds Pride Fest in Riverwalk Park*

25. Columbia Pride, a nonprofit organization, sought and obtained a permit from Columbia under §16-601, *et seq.*, concerning mass gatherings/special events, to hold Pride Fest in Riverwalk Park on June 4, 2023.

26. To obtain a permit for this event, Columbia Pride was required to fill out a mass gathering permit application and submit a permit request to the City.

27. Columbia Pride stated in the application that the event would be open to the public with no admission charge. It described the event as follows: "Columbia Pride is an all inclusive event that welcomes everyone in the community."

28. Brown heard about the Pride Fest and decided to attend. He considered the event a good and unique opportunity to share his evangelistic message.

### *Columbia Squelches Brown's Speech at Riverwalk Park during Pride Fest*

29. On the day of Pride Fest, June 4, 2023, Brown drove to Riverwalk Park, intending to share his gospel-oriented message with Pride Fest attendees.

30. Brown parked in a parking space outside of Riverwalk Park bordering Riverside Drive.

31. He grabbed his Bible and some pamphlets about transgenderism. He hoped the literature would lead to meaningful conversations about the gospel.

32. As Brown approached the park, he noticed several balloons signaling the Pride Fest event.

33. Brown walked into Riverside Park toward a pavilion area with some people mingling around inside it.

34. He offered his literature to a few attendees in the pavilion, seeking to spark conversation about the need for Jesus.

35. However, the individuals appeared busy and uninterested in having a conservation.

36. Brown then walked towards what appeared to him as the of center of the Pride Fest event where vendor tents were located.

37. But before Brown could reach the area with vendor tents, Lukas Banks, a representative of Columbia Pride, approached Brown and halted him.

38. Banks abruptly told Brown the Pride Fest was a permitted event and he had to go somewhere else to protest.

39. Brown advised Banks that he was not protesting the event.

40. Upon Banks characterizing Brown's pamphlets as "anti," Brown offered his literature to Banks for review, but Banks just glanced at the cover of the pamphlet.

41. Concerned about the directive, Brown informed Banks he did not know Banks' identity. To which, Banks replied, "Doesn't matter who I am," claiming to have authority to remove Brown from the park.

42. Officer Cooper and Officer Solano with the Columbia Police Department arrived on the scene and joined in the conversation. At that moment, Banks declared to Brown that they were going to go ahead and remove him from the park because the event is a permitted event.

43. Brown did not believe Pride Fest could remove him from a public park. He pointed out to Banks that the event was advertised as free and that everybody was welcome.

44. Banks acknowledged the event as free and open but said Brown's literature was unacceptable for the event.

45. Continuing, Banks told Brown that he would have to leave if he was not inclusive and friendly. Brown countered that he was inclusive and friendly.

46. Banks then turned to Officer Cooper and informed the police officer that Columbia Pride wanted Brown outside the park because Brown was supposedly handing out "anti-trans" literature.

47. Officer Cooper asked Brown to move, but Brown advised that he had some questions, and the officer agreed to answer them.

48. Brown asked about his constitutional rights. Officer Cooper told him his rights were being upheld, but Columbia Pride had the right to determine if Brown could remain in the park because they were renting out the park and could decide and who could and who could not be in the park.

49. Knowing the Pride Fest event was free and open to the public, Brown asked the officer whether Columbia Pride's permit showed it had a right to exclude people. The officer informed Brown the permit was on file with the City.

50. Brown stressed Riverside Park was public and free during the event.

51. Disagreeing, Officer Cooper reiterated Columbia Pride had rented Riverwalk Park, which turned the public park into private property.

52. The officer elaborated that a private entity could in fact exercise control over any property it rents.

6

53. Brown asked if a permittee has this same degree of control when Riverside Park is free for anyone to enter.

54. The police officer indicated this control would exist because the event organizer paid money to rent the space. He added the police would not let Brown hand out papers causing issues in the area.

55. Desiring to stay in the park, Brown advised the police officer that he would put his literature away. He planned to have conversations with people.

56. But Banks interjected, advising that Columbia Pride still wanted the police to keep Brown out of the public park, accusing Brown of having a nefarious purpose.

57. Brown inquired what was nefarious about handing out papers.

58. Banks responded that the literature he was handing out was damaging to people. Brown disputed the accusation. Banks said Brown could disagree, but he would have to disagree outside the boundaries of the event.

59. Not seeing any room for further discussion with Banks, Brown turned to Officer Cooper and asked him if the event was taking tickets or money for entry. He wanted to confirm his right to access the park. The officer advised he did not know.

60. Brown advised Officer Cooper that Columbia Pride could not exclude him from a public park unless they were taking up tickets, or money or did something else indicating the event was private.

61. Officer Cooper as well as Banks reiterated Columbia Pride could eject Brown from Riverside Park.

62. Brown asked what would happen if he decided to stay. Officer Cooper answered Brown would be prosecuted for criminal trespass and arrested.

63. Brown asked the police officer to confirm that he would arrest him for remaining in a park that was free and open to everyone else. The officer confirmed this understanding.

64. Brown wanted to remain in the park and convey his message. Reminding Officer Cooper that he would put his literature away, Brown asked if he was still required to leave the park.

65. The officer responded that Brown was unwelcome if Columbia Pride said so and he was there to enforce their wishes.

66. Brown informed the police officer that the police were violating his constitutional rights, and the officer said they would have to disagree on that contention.

67. Officer Cooper told Brown that he had to go beyond the boundaries of the park to speak.

68. Brown asked Officer Cooper if he could consult with the supervising police officer for the event. Officer Cooper agreed to arrange a meeting but said they would have to go beyond the event boundaries to continue the discussion.

69. Arriving at a spot on the sidewalk close to where the balloons were located, Officer Cooper called for his supervisor on his two-way radio.

70. The officer told Brown that the public area outside the balloons was public property where Brown could share his message.

71. Brown did not believe the space was a suitable spot for his speech, having limited opportunities to share his message there.

72. In the absence of any fencing or other barriers surround the park, attendees were free to walk into the park from virtually any direction.

73. Brown reminded Officer Cooper that the entire park is public property, but the officer maintained that Columbia Pride leased Riverwalk Park and had control over the park until the event concluded.

74. Brown informed the distinction made by the police officer was not possible, but the police officer retorted that they disagree on the issue.

75. Brown reiterated that he would forgo his leafletting inside the park. But the officer reiterated the permittee dictates who can be in the park and the police would enforce their decision to eject no matter the reason for the ouster.

76. Officer Cooper then took a call from his supervisor and apprised him of the situation, informing of his threat of arrest to Brown if he did not leave the permitted space.

77. While waiting for the supervisor to arrive, Brown asked if he could use a public restroom located within Riverwalk Park. Answering, Officer Cooper explained the restroom was part of the permitted space and therefore off-limits to Brown, suggesting he walk down the road to use a restroom.

78. Brown inquired about the boundaries of the event, and the police officer advised that the sidewalk where they were standing bordering the park served as the boundary.

79. A few minutes later, the supervising officer for the Columbia Police Department, Sergeant Keith Fall, drove up in a police vehicle. He parked and exited his vehicle and came up to them.

80. After exchanging pleasantries, Brown explained to the sergeant how Columbia police officers excluded him from Riverwalk Park under the threat of arrest.

81. Sgt. Fall explained Columbia Pride filed all the paperwork with the City for a permit and the City granted it, stating Columbia Pride was in charge of the park and could determine who was allowed to be on the property.

82. Brown asked the sergeant if the permit was an exclusive use permit because he did not see anyone taking money for the event.

83. Sgt. Fall answered that he did not know if the City has an exclusive use permits or if an exclusive use permit was granted to Columbia Pride, but his understanding was the permittee retains control over Riverwalk Park.

84. Brown continued to question Sgt. Fall how Columbia Pride could have control over public property without an exclusive use permit.

85. Declining to delve into that inquiry any further, Sgt. Fall responded: "Here's the thing. If you go on this property, we are going to arrest for criminal trespass."

86. He then made sure Brown understood what the sergeant was saying and Brown confirmed he did.

87. The sergeant added that Brown could go across the street and hand out pamphlets and say anything he wanted to say from that spot.

88. Brown tried to prevail on the sergeant that he did nothing wrong, he just handed out a few pamphlets. Sgt. Fall countered that he did something wrong when he stepped on Riverwalk Park property, which the sergeant called criminal trespass.

89. Sensing the sergeant was steadfast in upholding city policy, Brown advised he would leave the park. He saw no utility in remaining on the sidewalk outside the park and event with little opportunity to reach people with his message.

90. Sgt. Falls said he would appreciate it if Brown would leave because his absence would help keep the peace.

91. Sgt. Falls added that someone else at the police department wrote the event plan. He went on to explain to Brown that the directive was given to him and other police officers to follow.

92. Brown asked the sergeant whether he could use the public restroom in the park. Sgt. Falls opined that Columbia Pride should not have any problem with him doing that, but they decide whether Brown could be on the property, and the police would remove Brown if Columbia Pride wanted him removed.

93. Officer Cooper pointed out to Sgt. Falls that Brown could use another restroom located down the street.

94. Brown and the police officers wrapped up their conversation, and the police officers departed. As Brown was unable to interact with many people from where he was forced to be, he soon left as well.

### *Continuing Adverse Impact on Brown's Religious Speech*

95. The policy granting proprietary control and the ongoing ban on Brown's expression is untenable for Brown because he wants to go to Riverwalk Park and share his religious beliefs at the Pride Fest om 2024, as well as future years, and at other public events occurring in Riverside Park.

96. Seeking to resolve the dilemma without litigation, Brown sent correspondence through legal counsel dated September 13, 2023, to Mayor Chaz Molder requesting relief from the ban on his expression in Riverwalk Park and other public areas.

97. This letter described what happened to Brown on June 4, 2023, explaining how and why Columbia violated Brown's constitutional rights and the need to avoid constitutional violations in the future.

98. Brown's correspondence cited relevant case law delineating Brown's constitutional freedom to speak in traditional public fora during public events.

99. He contended that neither Columbia nor Columbia Pride changed the nature of the traditional public forum during Pride Fest, rendering the ban on Brown's speech unconstitutional.

100. Browns's letter sought written assurance from the City that it would refrain from issuing permits letting permittees ban protected religious expression in public areas, including Riverwalk Park, during public events.

101. No one from the City ever responded to Brown's plea.

*Immediate and Enduring Irreparable Harm to Brown*

102. The actions of Columbia, through its police officers, and refusal to give Brown relief, reveal a lingering intention to maintain a policy and practice of granting Columbia Pride and other permittees of Riverwalk Park proprietary control over speech during public events, enabling and empowering the event organizer to exclude disfavored viewpoints from the public park. The policy and practice is an unconstitutional heckler's veto enforced by Columbia's police department.

103. Columbia's policy and practice of giving permittees proprietary control over speech on public property during public events facilitates a content-based and a viewpoint-based restriction on Brown's religious expression in a traditional public forum.

104. Brown is eager to return to Pride Fest in Riverwalk Park this year and future Pride Fests in the park to share his Christian beliefs, but the fear of citation or arrest chills and deters him from doing so.

105. Brown would also like to attend other public events taking place in Riverwalk Park and share his religious message but fears the same outcome as the 2023 Pride Fest event.

106. The fear of arrest severely restricts Brown's constitutionally protected speech he wishes to communicate in Riverwalk Park during public events.

107. The chill on Brown's speech constitutes irreparable harm to him.

108. There is no adequate remedy at law for the denial of Brown's constitutional rights.

## FIRST CAUSE OF ACTION

### Free Speech Violation

109. Brown's religious expression is protected speech under the Free Speech Clause of the First Amendment to the United States Constitution.

110. Columbia's policy and practice, and enforcement thereof, including, but not limited to, supplying permittees with proprietary control over speech uttered on public property during public events and the resultant ban on Brown's disfavored expression in Riverwalk Park:

    a. are vague and overly broad;

    b. discriminates against speech due to religious content and viewpoint;

    c. permits the exercise of unbridled discretion;

    d. singles out a select type of speech for discriminatory restriction;

    e. chills the free speech and free exercise of religious expression of Brown as well as that of third-party citizens;

  f. creates a content-based and viewpoint-based heckler's veto that suppresses Brown's religious expression because of hostility to the message: and

  g. lacks narrow tailoring, fails to achieve any legitimate government purpose, and fails to leave open alternative avenues for expression.

111. Defendant cannot justify its censorship on the viewpoint Brown wants to express in a public park.

112. Columbia's policy and practice, and enforcement thereof, thus violate the Free Speech Clause of the First Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment.

  WHEREFORE, Brown respectfully prays the Court grant the equitable and legal relief set forth hereinafter in his prayer for relief.

## SECOND CAUSE OF ACTION

## Violation of Due Process Clause

113. Columbia's policy and practice of giving permittees proprietary control over speech on public property during public events are vague and lacks objective standards to curtail the discretion of police officers and City officials.

114. City policy and practice adversely affecting protected speech are administered in an *ad hoc*, arbitrary, and discriminatory manner.

115. Defendant has no compelling or legitimate reason that can justify its vague policy and practice or its enforcement against Brown.

116. Columbia's policy and practice, and enforcement thereof, is void for vagueness and violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Brown respectfully prays the Court grant the equitable and legal relief set forth hereinafter in his prayer for relief.

**PRAYER FOR RELIEF**

WHEREFORE, Brown respectfully prays for relief in that this Court:

A. Assume jurisdiction over this action;

B. Enter a judgment and decree declaring the actions taken by Defendant Columbia in prohibiting Plaintiff Brown from sharing his religious viewpoints in Riverwalk Park during the Columbia Pride Festival on June 4, 2023, violated Brown's constitutional rights, and particularly, his rights to free speech and due process.

C. Enter a judgment and decree declaring that Defendant Columbia's policy and practice of supplying Columbia Pride and other permittees of Riverwalk Park with proprietary control over speech taking place on said public property during a public event is unconstitutional on its face and as applied to Plaintiff Brown's desired speech (distributing literature and having oral conversations) because it violates Brown's rights and the rights of third parties not before the Court, as guaranteed under the First and Fourteenth Amendments to the United States Constitution.

D. Enter a preliminary and permanent injunction enjoining Defendant Columbia, its agents, officials, servants, employees, and all persons in active concert or participation with them, or any of them, from applying Columbia's policy and practice of giving a permittee proprietary control over speech in Riverwalk Park and other public parks during public events to enable a permittee to banish disfavored expression;

E. Adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, so such declaration shall have the force and effect of final judgment;

F.	That this Court award Plaintiff Brown nominal damages arising from the acts of the Defendant Columbia as an important vindication of his constitutional rights;

G.	That this Court award Plaintiff Brown his costs and expenses of this action, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law; and

H.	Grant such other and further relief as appears to this Court to be equitable and just.

Respectfully submitted,

/s/ Nathan W. Kellum
Nathan W. Kellum, Esq.
(Tenn. #13482, Miss.# 8813)
CENTER FOR RELIGIOUS EXPRESSION
699 Oakleaf Office Lane, Suite 107
Memphis, TN 38117
(901) 684-5485 – Telephone
 (901) 684-5499 – Fax
E-mail: nkellum@crelaw.org

/s/ Frederick H. Nelson
Frederick H. Nelson, Esq.*
Florida Bar No.: 0990523
Trial Counsel for Plaintiff
AMERICAN LIBERTIES INSTITUTE
P.O. Box 547503
Orlando, FL  32854-7503
Telephone: (407) 786-7007
Facsimile: (877) 786-3573
E-mail: dmarkese@ali-usa.org
E-mail: rick@ali-usa.org
*Admitted Pro Hac Vice


/s/ Kristin Fecteau Mosher
Kristin Fecteau Mosher, Esq.
Tennessee Bar No.: 19772
**The Law Office of Kristin Fecteau, PLLC**
5543 Edmonson Pike, Suite 229
Nashville TN 37211
Telephone: (615) 496-5747
E-mail: kristin@fecteaulaw.com

I, Timothy Brown, a citizen of the United States and a resident of Gallatin, Tennessee, hereby declare that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged therein are true and correct.

_____
TIMOTHY BROWN

17

Case 1:24-cv-00031    Document 1    Filed 03/26/24    Page 17 of 17 PageID #: 17